# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

LASHANNDA JONES, on behalf of
herself and on behalf of all others
similarly situated,

     Plaintiff,

v.                                       Case No. 3:18-cv-804-J-32JRK

THE SALVATION ARMY,

     Defendant.

_____

# O R D E R

In this Fair Credit Reporting Act class action, the Court must determine whether a prospective employer's background check disclosure was compliant with statutory requirements, and if not, whether such violation, without more, constitutes an injury in fact for Article III standing. Before the Court are the parties' Joint Motion for Preliminary Approval of Class Action Settlement, (Doc. 26); the parties' memorandums on standing, (Docs. 28, 29); Defendant The Salvation Army's Motion to Dismiss, (Doc. 10), Plaintiff LaShannda Jones's Response, (Doc. 37); and The Salvation Army's Motion to Strike, (Doc. 38), and Jones's Response (Doc. 39). On March 25, 2019, the Court held a hearing, the record of which is incorporated herein. (Docs. 30, 35).

## I. BACKGROUND

### A. Class Representative's Claims

On approximately January 31, 2018, Jones applied for and was hired as an assistant store manager at The Salvation Army. Complaint, Doc. 9 ¶ 14. As part of the application process, The Salvation Army gave Jones "several documents related to the [Fair Credit Reporting Act of 1970 ("FCRA")], all of which [were] presented simultaneously . . . ." (Id. ¶ 36). On February 23, 2018, The Salvation Army fired Jones without notice. (Id. ¶ 15). Confused about why she was fired, Jones called The Salvation Army's Georgia office, which informed her that she was fired because of credit issues identified in her background report. (Id. ¶ 17). Although Jones does not contest the accuracy of the report, she wanted to explain the circumstances that caused her credit issues before being terminated. (Id. ¶ 18).

Jones contends that The Salvation Army routinely violated the FCRA in its hiring process by providing confusing, noncompliant disclosures. (Id. ¶¶ 38–39, 47). Further, Jones asserts that the authorization she gave The Salvation Army to obtain a consumer report was invalid because "[o]ne cannot meaningfully authorize her employer to take an action if she does not grasp what the action entails." (Id. ¶ 89). Jones also claims that The Salvation Army violated the FCRA when it fired her based on information contained in her credit report without first providing her with a copy of the report. (Id. ¶ 16).

## B. Procedural History

Jones filed a class action complaint in Florida's Fourth Judicial Circuit, claiming that The Salvation Army's FCRA violations harmed two classes: a Pre-Adverse Action Class and a Background Check Class. (Doc. 9 ¶¶ 62–63). The Salvation Army removed this action, (Doc. 1), and moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim. (Doc. 5). The Salvation Army argued that Jones lacked standing because her injury was a "bare procedural violation that, without more, cannot rise to the level of concrete injury needed for Article III standing." (Doc. 5 at 19).

Jones then filed an Amended Class Action Complaint,[1] which contends that The Salvation Army violated the FCRA by failing to provide Jones a copy of her consumer report before taking an adverse employment action (First Class Claim for Relief—"pre-adverse action" claim), failing to make a proper disclosure of Jones's rights regarding the background check (Second Class

---

[1] The Amended Complaint is a shotgun pleading. See Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1126 (11th Cir. 2014) (explaining that a shotgun pleading is a complaint wherein each count adopts the allegations of all preceding counts). The Eleventh Circuit has long condemned shotgun pleadings. See generally Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1320–24 (11th Cir. 2015) (explaining the Eleventh Circuit's history of combatting shotgun pleadings). However, because the Second and Third Class Claims for Relief are to be either remanded or dismissed, this defect no longer affects the Amended Complaint.

Claim for Relief—"disclosure" claim), and failing to obtain proper authorization to conduct the background check (Third Class Claim for Relief – "authorization" claim). (Doc. 9). Additionally, Jones alleges various injuries she suffered as a result of The Salvation Army's alleged FCRA violations. (Doc. 9 ¶¶ 54–61). The Salvation Army moved to dismiss again under 12(b)(1) and 12(b)(6). (Doc. 10). In response, Jones moved to remand, arguing that The Salvation Army has the burden of establishing jurisdiction and thus, the Court should remand if The Salvation Army believes that Jones lacks Article III standing. (Doc. 11). Jones further contends:

> If Defendant wants to be in this Court and is willing to show a jurisdictional basis to be here, Plaintiff has no objection. But Defendant has shown itself unwilling to carry that burden: by moving to have this case dismissed for lack of subject matter jurisdiction, Defendant denies the very federal court jurisdiction it invoked upon removal.

(Doc. 11).

After several motions for extensions of time, the parties moved to stay the case while they attempted early mediation, (Doc. 17), which the Court granted, (Doc. 18). The parties settled at mediation, (Doc. 23), and then filed a Joint Motion for Preliminary Approval of Class Action Settlement, (Doc. 26). The motion states that the parties have agreed to a settlement and seek the Court's preliminary and, ultimately, final approval. (Doc. 26). The settlement consists of The Salvation Army contributing $500,000 to a fund that would be

distributed to two separate classes: The Disclosure and Authorization Class, which consists of approximately 25,579 members; and the Pre-Adverse Action Class, which has approximately 1,537 members, all of whom also belong to the Disclosure and Authorization Class. (Doc. 26 at 7–9).

After reviewing the Motion for Preliminary Approval, the Court, concerned about its jurisdiction, directed each party to file a memorandum discussing whether Jones, the class representative, has Article III standing. (Doc. 27). The parties filed their respective briefs, (Docs. 28, 29), and the Court held a hearing on the motion, the record of which is incorporated herein, (Doc. 30). Following the hearing, the Court deferred ruling on the Motion for Preliminary Approval and directed Jones to respond to The Salvation Army's motion to dismiss. (Doc. 34). Jones filed her response, arguing that the parties want to settle, she has standing, and the complaint states claims for relief. (Doc. 37). The Salvation Army then moved to strike portions of Jones's response that referenced settlement discussions, (Doc. 38), to which Jones responded in opposition, (Doc. 39).

## II. DISCUSSION

### A. The Fair Credit Reporting Act of 1970, 15 U.S.C. § 1681 et seq.

Before procuring a consumer report on an applicant, the FCRA requires employers to provide the applicant with "a clear and conspicuous disclosure . . . in writing . . . <u>in a document that consists solely of the disclosure,</u>" that informs

the applicant that a consumer report may be obtained. 15 U.S.C. § 1681b(b)(2)(A) (2018) (emphasis added). An employer may not obtain the consumer report unless the applicant provides written authorization, which may be obtained on the disclosure. Id. Further, the FCRA requires that an employer provide the employee with a copy of the report and a written description of the employee's rights under the FCRA before taking adverse action based on information in a consumer report. Id. § 1681b(b)(3)(A).

Any person who negligently fails to comply with the FCRA is liable for actual damages sustained, attorneys' fees, and costs. Id. § 1681o(a). Any person who willfully fails to comply with the FCRA is liable for actual damages or statutory damages of $100 to $1,000 per violation, attorneys' fees and costs, and possibly punitive damages. Id. § 1681n(a). Jones has alleged willful violations. (Doc. 9 ¶¶ 75, 77, 83, 84, 89, 91).

## B. Article III Standing

Although the parties have settled the case, the Court must ensure it has jurisdiction to provide the requested relief. Frank v. Gaos, 139 S. Ct. 1041, 1046 (2019) ("A court is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute, and federal courts lack jurisdiction if no named plaintiff has standing."); see A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co., 925 F.3d 1205, 1210 (11th Cir. 2019) ("Standing cannot be waived or conceded by the parties, and it may be raised (even by the court sua sponte) at

any stage of the case."). If Jones lacks standing, then the Court cannot certify the two classes and approve the preliminary settlement. See Church v. Accretive Health, Inc., 654 F. App'x 990, 995 (11th Cir. 2016) ("[S]tanding is a jurisdictional threshold question which must be addressed prior to and independent of the merits of a party's claims." (quotation marks omitted) (quoting DiMaio v. Democratic Nat'l Comm., 520 F.3d 1299, 1301 (11th Cir. 2008))).

### 1. The standard for reviewing a complaint for lack of standing.

"A district court may dismiss a complaint for lack of subject-matter jurisdiction based on: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint plus undisputed facts plus the court's resolution of disputed facts." Butler v. Morgan, 562 F. App'x 832, 834 (11th Cir. 2014) (per curiam) (unpublished) (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. May 1981)). Here, the Court relies on only the Amended Complaint and undisputed facts in the record, and therefore it need not hold an evidentiary hearing.[2] Cf. Bischoff v. Osceola Cty., 222 F.3d 874, 881 (11th Cir. 2000) (requiring an evidentiary hearing in cases "where the evidence relating

---

[2] Besides the Amended Complaint and attachments thereto, the Court only relies on Jones's affidavit and her counsel's statements at the hearing.

to standing is squarely in contradiction as to central matters <u>and</u> requires credibility findings . . . .").

Although a court is generally required to accept the factual allegations of the complaint as true, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), it "does not accept as true unwarranted deductions of fact." <u>Almanza v. United Airlines, Inc.</u>, 851 F.3d 1060, 1071 (11th Cir. 2017). And, a court is not required to accept as true conclusory allegations and mere legal conclusions. <u>Iqbal</u>, 556 U.S. at 678. The Court's "duty to accept the facts in the complaint as true does not require [it] to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." <u>Griffin Indus., Inc. v. Irvin</u>, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

"[T]he party asserting federal jurisdiction when it is challenged has the burden of establishing it." <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 342 n.3 (2006). As the removing party, The Salvation Army had the initial burden of demonstrating federal jurisdiction. <u>See</u> <u>id.</u> However, after The Salvation Army moved to dismiss for a lack of standing, Jones filed an amended complaint that added allegations of injury to combat The Salvation Army's standing argument, (Doc. 9 ¶¶ 54–61), and she has argued in her supplemental memorandum on standing, at oral argument, and in response to The Salvation Army's motion to dismiss that she has standing, (Docs. 28, 35, 37). Thus, Jones

is now the party asserting jurisdiction, giving her the burden of demonstrating standing. See Cuno, 547 U.S. at 341–42 (finding that the plaintiff, who had originally sought to remand the case based on concerns for lack of standing, was the party asserting federal jurisdiction because it had argued it had standing in its briefs to the Supreme Court).

"[A] plaintiff must demonstrate standing for each claim [s]he seeks to press. . . ." Town of Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650 (2017) (quotation marks omitted) (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008)). And, "[i]t is well-settled that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.'" Gerber Chiropractic, 925 F.3d at 1211 (quoting O'Shea v. Littleton, 414 U.S. 488, 494 (1974)). Thus, as class representative, Jones must demonstrate standing for all of her claims. Laroe Estates, 137 S. Ct. at 1650.

2. Injury in fact under Article III.

To satisfy the "'irreducible constitutional minimum' of standing," the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an

9

invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560).

Only the injury in fact element is at issue here, and more specifically, whether Jones alleges a concrete injury.[3] When determining whether a plaintiff has alleged a concrete injury, courts must look at the "allegations in light of the statute, [Eleventh Circuit] precedent, history, and the judgment of Congress." Salcedo, 936 F.3d at 1173.

"[A]n act of Congress that creates a statutory right and a private right of action to sue does not automatically create standing; 'Article III standing requires a concrete injury even in the context of a statutory violation.'" Id. at 1167 (quoting Spokeo, 136 S. Ct. at 1549). Accordingly, a bare procedural violation of a statutory requirement, without more, is insufficient to create an injury in fact. Spokeo, 136 S. Ct. at 1549. "A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a

---

[3] "An injury in fact must also be particularized, that is, affecting the plaintiff "in a personal and individual way. . . . As the would-be class representative, [Jones] must establish [her] own personal, concrete injury notwithstanding whatever injuries may have been suffered by the other members of the class." Salcedo v. Hanna, 936 F.3d 1162, 1167 n.3 (11th Cir. 2019) (citations and quotations omitted) (quoting Spokeo, 136 S. Ct. at 1547 n.6, 1548). Here, Jones's allegations are of a personal and individual nature.

consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate." Id. at 1550. However, the "risk of real harm" can satisfy the concrete injury requirement, and the violation of a statutory right can be a concrete injury if it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Id. at 1549–50 (citing cases that found the violation of a statutory right to receive information was a concrete injury (citing Fed. Election Comm'n v. Akins, 524 U.S. 11, 20–25 (1998); Public Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989))).

The distinction between a "bare procedural violation" and a substantive one causing concrete injury is not always clear. In a post-Spokeo case, the Eleventh Circuit, in an unpublished opinion, found that an individual who did not receive disclosures required under the Fair Debt Collections Practices Act ("FDCPA") had suffered a concrete injury, although the individual failed to allege any damages. Church, 654 F. App'x at 991, 994. The court stated that "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." Id. at 994. Although the injury of not receiving information to which the plaintiff was entitled did not result "in tangible economic or physical harm that courts often expect, the Supreme Court

has made clear an injury need not be tangible to be concrete." Id. at 995. The Eleventh Circuit distinguished the "bare procedural violation" discussed in Spokeo by noting "Congress provided [the plaintiff] with a substantive right to receive certain disclosures and [the plaintiff] has alleged that [the defendant] violated that substantive right." Id. at 995 n.2.

However, a failure to record a certificate of discharge within the required ninety days, absent a showing of harm caused by such violation, is insufficient to create a concrete injury. Nicklaw v. Citimortgage, Inc., 839 F.3d 998, 1002 (11th Cir. 2016). In Nicklaw, the plaintiff sued under New York law after the defendant failed to record the certificate of discharge within the timeframe required. Id. at 1000. The Eleventh Circuit found no injury in fact because the certificate of discharge was recorded prior to filing suit (albeit after the ninety-day deadline), and the plaintiff failed to allege a harm or material risk of harm resulting from the late recording. Id. at 1003.

In determining standing based on the failure to provide the stand-alone disclosure required by the FCRA, district courts have reached different conclusions. Compare, e.g., Stacy v. Dollar Tree Stores, Inc., 274 F. Supp. 3d 1355, 1364 (S.D. Fla. 2017) (finding no concrete injury where plaintiff received and understood the disclosure and knowingly consented to the background check despite the disclosure not being a standalone document), and LaFollette v. RoBal, Inc., No. 1:16-CV-2592-WSD, 2017 WL 1174020, at *4 (N.D. Ga. Mar.

30, 2017) (finding a lack of standing and stating "[a] statutory right to information is substantive. A statutory right to receive that information in a particular format is procedural." (quoting Landrum v. Blackbird Enters., LLC, 214 F. Supp. 3d 566, 571 (S.D. Tex. 2016)), with Fosbrink v. Area Wide Protective, Inc., 325 F.R.D. 474, 479 (M.D. Fla. 2018) (compiling cases and stating, "Plaintiff has established that he was deprived of the statutory right to receive a stand-alone disclosure.").

### 3. Jones has standing for her pre-adverse action claim.

The FCRA requires that before taking an adverse employment action based on a consumer report, the employer provide the job applicant with a copy of the report and a written description of rights under the FCRA. § 1681b(b)(3)(A). Jones has alleged standing for her claim that The Salvation Army violated this provision by failing to provide her with a copy of her consumer report before firing her. (Doc. 9 ¶ 16). Jones alleges that she did not receive the consumer report, and that upon inquiry, Jones was told that she was fired for adverse credit information contained in her report. (Id. ¶¶ 16–17). Further, Jones alleges that had she been given a copy of her report before The Salvation Army took adverse action, she would have been able to explain the innocuous nature of the unfavorable information. (Id. ¶ 18). These are sufficient allegations that Jones was fired without being given an opportunity to explain her report—an intangible injury that is nonetheless concrete. See Spokeo, 136

S. Ct. at 1549; see also Robertson v. Allied Sols., LLC, 902 F.3d 690, 697 (7th Cir. 2018) (explaining in an FCRA case that by not being given a copy of her consumer report before an adverse action, a plaintiff is denied the opportunity to respond to a potential employer's concerns).

Relying on Spokeo, The Salvation Army argues that Jones lacks standing because even though it did not provide Jones with the report before firing her, the information was accurate. (Doc. 10 at 8). This argument fails for two reasons. First, despite accurate information, an aggrieved party may nonetheless have an intangible harm resulting from the statutory violation. Jones alleges that she was unable to explain the reasons for negative information in her report, and intangible harm resulted irrespective of the report's accuracy. Cf. Long v. Se. Pa. Transp. Auth., 903 F.3d 312, 319 (3d Cir. 2018) ("The meaning of § 1681b(b)(3) is plain: before an employer takes adverse action based in any part on a consumer report, the consumer has a right to receive a description of his rights under the FCRA, as well as a copy of his report, regardless of its accuracy."). Second, "Spokeo was discussing a different point in the process—the relationship between an agency and a user (i.e. employer), not the relationship between the user and the consumer (i.e. the job applicant). The statutory duties that apply to each of these situations differ in important respects . . . ." Robertson, 902 F.3d at 697.

In sum, Jones's inability to provide context concerning her negative credit information that could have possibly changed The Salvation Army's mind is a concrete injury for her pre-adverse action claim. Id. As the Seventh Circuit explained: "Providing context may be more valuable than contesting accuracy. . . . [I]information that seems damning at first glance might not be so bad in context. A person with a spotted record might convince an employer to revisit its decision if she can explain what happened." Id. Had Jones been given a copy of her report before being fired, she would have been able to explain the causes of her credit issue. (Doc. 9 ¶ 18). The lack of that opportunity—what the statute intends to protect—is a concrete injury. See Robertson, 902 F.3d at 697.

### 4. Jones lacks standing for her disclosure and authorization claims.

Jones's disclosure and authorization claims are not as easily resolved. Jones alleges that when she applied for a job with The Salvation Army, she was given a job application packet containing several documents. (Doc. 9 ¶ 35). Jones complains that because the packet contained several documents related to the FCRA, the documents "cannot possibly be construed as compliant with the FCRA's stand-alone disclosure mandate." (Id. ¶ 36). In this packet, Jones received The Salvation Army's "Disclosure Regarding Employment Background Report" ("the Disclosure Form"), (Doc. 9-2); The Salvation Army's "Authorization to Obtain Employment Background Report" ("the Authorization

Form"), (Doc. 9-3); the consumer reporting agency, Sterling's, "Consent to Request Consumer Report & Investigative Consumer Report Information" ("the Sterling Form"), (Doc. 9-1); and other normal job application materials, (Doc. 9 ¶ 46). On its own piece of paper, the Disclosure Form stated:



## Disclosure Regarding Employment Background Report

The Salvation Army ("COMPANY") may obtain from Sterling Infosystems, Inc. ("STERLING"), 1 State Street, New York, NY 10004, (877) 424-2457, www.sterlinginfosystems.com, a consumer report and/or an investigative consumer report ("REPORT") that contains background information about you in connection with your employment or employment application. If you are hired, to the extent permitted by law, COMPANY may obtain from STERLING further reports throughout your employment for an employment purpose without providing further disclosure or obtaining additional consent.

The REPORT may contain information about your character, general reputation, personal characteristics and mode of living. The REPORT may include, but is not limited to, credit reports and credit history information; criminal and other public records and history; public court records (e.g., bankruptcies, tax liens and judgments); motor vehicle and driving records; educational and employment history, including professional disciplinary actions; drug/alcohol test results; and Social Security verification and address history, subject to any limitations imposed by applicable federal and state law. This information may be obtained from public record and private sources, including credit bureaus, government agencies and judicial records, former employers and educational institutions, and other sources.

If an investigative consumer REPORT is obtained, in addition to the description above, the nature and scope of any such REPORT will be employment verifications and references, or personal references.

In the Amended Complaint, Jones alleges that the Disclosure Form "misled and confused" her and "distracted her attention away from what was supposed to be the focus of the document: to alert Plaintiff that a consumer report was to be procured on her for employment purposes." (Id. ¶ 42). As for the Authorization Form, Jones asserts that "[u]nder no set of facts or

circumstances can Defendant cogently argue that this document in any way satisfied 15 U.S.C. § 1681b(b)(2)(i)." (Id. ¶ 45). Further, Jones alleges that she "was confused by Defendant's multiple disclosure forms, including as to the content in each . . . ."[4] (Id. ¶ 47).

Additionally, Jones asserts four other means by which she suffered a concrete injury. (Id. ¶¶ 54–61). First, she allegedly suffered a "concrete informational injury because Defendant failed to provide Plaintiff with information to which she was entitled to by statute, namely a stand-alone FCRA disclosure form." (Id. ¶ 54). Second, Jones contends that she has suffered an invasion of privacy because the alleged ineffective disclosure prevented her from giving knowing authorization. (Id. ¶ 56). Third, Jones alleges that she suffered a "risk of harm" that she "would be harmed in precisely the way Congress was attempting to prevent . . . ." (Id. ¶ 57). Lastly, Jones argues that she has suffered "a clear de facto injury, i.e., the unlawful disclosure of legally protected information." (Id. ¶ 60).

---

[4] Jones argues that the Sterling Form is The Salvation Army's attempt at an FCRA disclosure, and that "courts around the country going back as far as 2015 have uniformly held is violative of the FCRA's stand-alone disclosure requirement. . . ." (Doc. 9 ¶ 38); (Doc. 37 at 13). Although the Sterling Form would be an improper disclosure, it is not The Salvation Army's FCRA disclosure. The Salvation Army provided its own Disclosure Form to comply with the FCRA. As explained in greater detail below, that The Salvation Army also provided a form required by the consumer reporting agency does not per se render the Disclosure Form noncompliant.

As a threshold matter, Jones conflates the FCRA's requirement—"a document that consists solely of the disclosure"—with the notion that the disclosure cannot be provided in conjunction with other documents. At the hearing, Jones's counsel stated that to be compliant, the disclosure would have to be "completely apart" from all other documents. (Doc. 35 at 18–19). When pressed by the Court to explain this position, Jones's counsel went so far as to state that a disclosure would need to be presented at the opposite end of a desk from any other document to satisfy the FCRA's requirement that an applicant be given "a document that consists solely of the disclosure." § 1681b(b)(2)(A); (Doc. 35 at 18–19). This misconception is key: although "the violation of a procedural right granted by statute" may pose the "risk of real harm" to a concrete interest, <u>Spokeo</u>, 136 S. Ct. at 1549, Jones has misconstrued the procedural right granted by the FCRA.

The FCRA requires that the disclosure be made in "a document that consists solely of the disclosure," or a document containing the disclosure and the authorization. § 1681b(b)(2). The word "solely" modifies "the disclosure," meaning that the document that contains the disclosure can have only the disclosure on it. The FCRA does not further require that the document containing only the disclosure be provided "apart" from <u>other</u> documents.[5] Such

---

[5] The Court is not alone in reaching this determination. <u>See</u> <u>Luna v. Hansen & Adkins Auto Transp., Inc.</u>, 313 F. Supp. 3d 1151, 1159 (C.D. Cal.

a requirement, which is not mandated by the FCRA, would make it impossible for employers to provide the disclosure to applicants along with other application documents. The Salvation Army provided Jones with a packet containing separately titled documents. (Docs. 9-1, 9-2, 9-3, 9-4). That the packet contained multiple documents does not mean the separately titled Disclosure Form—that was printed on its own piece of paper—was not "a document that consists solely of the disclosure . . . ." § 1681b(b)(2)(A)(i). Thus, Jones has not alleged a violation of a procedural right for which any risk of harm provides standing.

---

2018) ("[T]he Court refuses to impose a requirement that is absent from the clear statutory language, that is, a requirement that employers provide an FCRA disclosure not only in a separate document, but also separate in time from any other documents."); <u>Walker v. Fred Meyer, Inc.</u>, No. 3:17-CV-01791-YY, 2018 WL 2455915, at *5 (D. Or. May 7, 2018) ("[P]resenting the statutorily sufficient Disclosure with other employment documents, i.e., the Offer Acceptance and the Authorization, did not destroy its stand-alone character."), <u>report and recommendation adopted in part,</u> No. 3:17-CV-1791-YY, 2018 WL 3090199 (D. Or. June 21, 2018) (adopting court's holding regarding the disclosure); <u>Cooper v. Acad. Mortg. Corp. (UT)</u>, No. 1:16-cv-1546-LMM-CMS, 2017 WL 2060004, at *5 (N.D. Ga. Mar. 24, 2017) ("That the separate packets were provided to Plaintiff at the same time does not make them the same document. To require otherwise would import a temporal limitation on Defendant which has no statutory basis."); <u>Newton v. Bank of Am.</u>, No. 2:14-cv-03714-CBM-MRWx, 2015 WL 10435907, at *8 (C.D. Cal. May 12, 2015) ("The FCRA does not prohibit an employer from providing an FCRA disclosure as part of the employer's job application process. Nor does the FCRA prohibit an employer from providing an FCRA disclosure at the same time the employer provides other employment documents.").

Although the Amended Complaint also appears to attack the contents of the Disclosure Form (as opposed to the manner in which it was provided), Jones merely relies on conclusory and contradictory allegations that she was confused. (Doc. 9 ¶¶ 41–42); see Iqbal, 556 U.S. at 678 ("[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Jones's allegation that the Disclosure Form "distracted her attention away from . . . alert[ing her] that a consumer report was to be procured on her for employment purposes," (Doc. 9 ¶ 42), contradicts her previous allegation explaining the exact types of documents and reports that the Disclosure Form states would be procured, (Doc. 9 ¶ 41). Further, the conclusory allegation that Jones was confused by the Disclosure Form is contradicted by the form itself, which clearly and conspicuously explains what information The Salvation Army may obtain. (Doc. 9-2).

Moreover, while Jones generally alleges that the Disclosure and Authorization Forms confused her, she specifically alleges and avers that it was the combination of documents she found confusing. Decl. of LaShannda Jones, Doc. 26-4 ("I was provided with the 'Sterling disclosure,' . . . as well as other FCRA-related documents . . . and was confused by this combination of forms."); Doc. 9 ¶ 47 ("Plaintiff was confused by Defendant's multiple disclosure forms . . . ."). And Jones's counsel stated at the hearing: "The disclosure—if that were

presented by itself, we would not have a problem—we would not be here."[6] (Doc. 35 at 19). The Court need not accept as true contradictory, conclusory allegations which attempt to allege a statutory violation where none exists. Griffin Indus., 496 F.3d at 1205–06 ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

In her response to the motion to dismiss, Jones raises for the first time a new issue with the Disclosure and Authorization Forms—that they disclose and authorize both a consumer report and an investigative consumer report. (Doc. 37 at 15 (citing Mitchell v. Winco Foods, LLC, 379 F. Supp. 3d 1093, 1098–99 (D. Idaho 2019), appeal filed, 19-35802 (9th Cir. Sept. 18, 2019))). Mitchell held that an employer violates the FCRA's separate disclosure requirement if "[i]t simultaneously provides applicants with notice that that [sic] [the employer] will obtain both a consumer report (as it is defined by the FCRA at section

_____

[6] Despite stating this unequivocally at the hearing, in a footnote in the response to the motion to dismiss, Jones's counsel states that "[t]hat was an incorrect statement by the undersigned [Jones's counsel] for the reasons set forth herein, and for the reasons set forth in the Amended Complaint . . . ." (Doc. 37 at 15 n.5). However, despite this effort at backtracking, the reasons in the Amended Complaint and in the response to the motion to dismiss, as stated here, are unpersuasive.

1681a(d)(1)) and an investigative consumer report (as it is defined by the FCRA at section 1681d(a)).” <u>Mitchell</u>, 379 F. Supp. 3d at 1098–99. The <u>Mitchell</u> court acknowledged two other district court cases from within the Ninth Circuit “which found that [such] a combined disclosure does not violate the statutory requirement.” <u>Id.</u> at 1099 1 (citing <u>Walker</u>, 2018 WL 2455915, at *5 (D. Or. May 7, 2018) and <u>Coleman v. Kohl’s Dep’t Stores, Inc.</u>, No. 15-CV-02588-JCS, 2015 WL 5782352 (N.D. Cal. Oct. 5, 2015)). In discussing these cases, the <u>Mitchell</u> court stated: “In terms of the policy reasons underlying the statutory requirement, the Court finds those cases [<u>Walker</u> and <u>Coleman</u>] persuasive. However, the Court concludes that they are inconsistent with the unambiguous decisions of the Ninth Circuit. . . .” <u>Id.</u> The court further stated:

> As suggested in this decision, I agree with my colleagues in the <u>Walker</u> and <u>Coleman</u> cases that combining the consumer report and investigative consumer report is wholly consistent with the purpose and intent of the FCRA. Unfortunately, it is not consistent with the statutory language. It is my understanding that the <u>Walker</u> decision is currently on appeal before the Ninth Circuit. Thus, the Circuit will soon have the opportunity to address the precise issue presented here. If the <u>Walker</u> decision is affirmed – as I hope it is – WINCO can, and should, file a motion to reconsider my decision here.

<u>Id.</u> at 1099 n.1.

That <u>Mitchell</u> found that a similar disclosure form violates the FCRA does not save Jones’s claim. First, <u>Mitchell</u> is not binding on this Court. Second, even if the inclusion of “and/or an investigative consumer report” results in the

Disclosure Form violating the FCRA, Jones has not alleged any harm caused by that violation. Spokeo, 136 S. C. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [the plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."). Nowhere in the Amended Complaint does Jones mention "investigative consumer report" in relation to the Disclosure Form, much less that its inclusion in the Disclosure Form somehow injured her. (Doc. 9).

Jones also argues that she suffered a concrete injury for her authorization claim because she would not have signed the Authorization Form had she known it and the Disclosure Form were not compliant with the FCRA. (Doc. 9 ¶ 48). This circular argument lacks merit. See Spokeo, 136 S. Ct. at 1547. To have a concrete injury, Jones would need to have alleged that some FCRA violation caused her to not understand what was being disclosed or what she was authorizing. See Stone v. U.S. Sec. Assocs., Inc., No. 1:16-CV-0371-MLB-JSA, 2018 WL 3745051, at *11–14 (N.D. Ga. May 31, 2018) (compiling cases and explaining that to show a concrete injury a plaintiff must allege that she misunderstood the consent being given or what she was authorizing).

Jones's other arguments that she suffered a concrete injury also fail. "[A] constitutionally cognizable informational injury requires that a person lack access to information to which [s]he is legally entitled and that the denial of

that information creates a 'real' harm with an adverse effect." <u>Stacy</u>, 274 F. Supp. 3d at 1363 (quotation marks omitted) (quoting <u>Dreher v. Experian Info. Sols., Inc.</u>, 856 F.3d 337, 345 (4th Cir. 2017)). But here, Jones received the information to which she was entitled: a clear, conspicuous, and separate disclosure explaining what information The Salvation Army would obtain. (Doc. 9-2). Because she received the statutorily required information, she did not suffer an informational injury.

Contrary to Jones's assertion, <u>Church</u> does not compel the opposite result. 654 F. App'x at 995. In <u>Church</u>, the plaintiff "sufficiently alleged that she has sustained a concrete—<u>i.e.</u>, 'real'—injury because she did not receive the allegedly required disclosures." <u>Id.</u> Distinguishing <u>Spokeo</u>, the Eleventh Circuit explained that the plaintiffs had not suffered a bare procedural violation because the right to receive information was substantive. <u>Church</u>, 654 F. App'x at 995 n.2. Here, Jones received the required information via the Disclosure Form; she incorrectly alleges it was not in the correct format, which would have been a procedural violation. <u>Cf.</u> <u>id.</u>

Jones's contention that she suffered injuries in the form of an invasion of privacy and "a clear <u>de facto</u> injury, <u>i.e.</u>, the unlawful disclosure of legally protected information," (<u>Id.</u> ¶ 60), also fail because she gave knowing consent, (Doc. 9-3). That she allegedly would not have consented had she known the Disclosure Form suffered from a bare procedural violation is not a concrete

injury. Jones received the information required under the FCRA and then authorized The Salvation Army to procure a consumer report for employment purposes. (Doc. 9-3). In the absence of allegations that Jones did not understand what she was authorizing because of an FCRA violation, the Court accepts Jones's signature on the Authorization Form as valid consent. See <u>Walker v. REALHome Servs. & Sols., Inc.</u>, No. 1:18-cv-03044-WMR-WEJ, 2019 WL 1225211, at *6–7 (N.D. Ga. Jan. 28, 2019) (explaining that a concrete injury would require the plaintiff to allege that he was unaware of what he was signing or that did not realize he was authorizing a background check because of the alleged procedural violation).

Lastly, Jones has failed to allege any specific heightened risk of harm. See <u>Spokeo</u>, 136 S. Ct. at 1549; (Doc. 9 ¶¶ 57–59). Jones alleges that The Salvation Army's "violations created a risk of harm that Plaintiff and the putative Background Check class members would be harmed in precisely the way Congress was attempting to prevent when it mandated what disclosures employers must make to applicants." (Doc. 9 ¶ 57). However, she fails to allege what harm she faced and how the alleged violations increased the risk of that harm.[7] See <u>Spokeo</u>, 136 S. Ct. at 1549. It is unclear if Jones is claiming harm

---

[7] In asserting this point, Jones relies on <u>Muransky v. Godiva Chocolatier, Inc.</u>, 922 F.3d 1175, 1188 (11th Cir. 2019). (Doc. 37 at 10–11). In that case, the Eleventh Circuit concluded that an individual who alleged he suffered a heightened risk of identity theft because a retailer printed more than the last

because she was confused about how to correct erroneous information in a consumer report. (Doc. 9 ¶ 57). Even if the Court assumes as much, Jones lacks a concrete injury because her information was correct, and any confusion about how to correct the information would be an injury corresponding to her pre-adverse action claim not her disclosure and authorization claims. See <u>Laroe Estates</u>, 137 S. Ct. at 1650 (stating that standing must be demonstrated for each claim asserted).[8]

---

five digits of his credit card number on a receipt—a violation of the Fair and Accurate Credit Transaction Act ("FACTA")—alleged a concrete injury. <u>Muransky</u>, 922 F.3d at 1188. Recently, the Eleventh Circuit vacated the opinion and decided to rehear the case en banc. <u>Muransky v. Godiva Chocolatier, Inc.</u>, No. 16-16486, 2019 WL 4891989, at *1 (11th Cir. Oct. 4, 2019). However, even if the opinion had not been vacated, the Court's decision here would not change because Jones has not alleged that "'the violation of a procedural right granted by statute' poses a 'risk of real harm' to a concrete interest." <u>Muransky</u>, 922 F.3d at 1186 (quoting <u>Spokeo</u>, 136 S. Ct. at 1549).

[8] Jones also filed two notices of supplemental authority to support her argument that she has standing. (Docs. 40, 42). However, neither of the cases support the argument that Jones suffered a concrete injury. The first case, <u>Dukes v. Air Canada</u>, No. 8:18-cv-2176-T17JSS (M.D. Fla. Sept. 26, 2019), which was a report and recommendation and the district judge's adoption of it, was ruling on a motion to preliminarily approve a class action settlement and did not address whether the plaintiff had alleged a concrete injury. The second case, <u>Harake v. Trace Staffing Sols., LLC</u>, No. 8:19-cv-243-T-36CPT (M.D. Fla. Nov. 6, 2019), did address whether the plaintiff had suffered a concrete injury in a similar FCRA case. However, the employer in <u>Harake</u> failed to provide a stand-alone disclosure because its disclosure "contained extraneous information that confused Plaintiff about his rights and was written in tiny writing." <u>Id.</u> at 2. As explained, The Salvation Army's Disclosure Form was compliant. Thus, <u>Harake</u> is inapposite.

In sum, as a matter of law, Jones did not suffer a concrete injury related to her disclosure and authorization claims. She received a clear and conspicuous disclosure in a form consisting solely of the disclosure, see § 1681b(b)(2)(A), and her authorization was knowing and voluntary. As class representative, she fails to bring an actual case or controversy under Article III for her disclosure and authorization claims (Second and Third Class Claims for Relief), and therefore those claims shall be remanded or dismissed.

## C. Rule 12(b)(6) Motion to Dismiss

The Salvation Army also filed a motion to dismiss Jones's claims as failing to state claims under Rule 12(b)(6). (Doc. 10). Because of the Court's finding that Jones lacks standing to bring her disclosure and authorization claims, the Court need not examine The Salvation Army's motion under Rule 12(b)(6). However, because the Court has determined that Jones has not alleged a FCRA violation as to the disclosure and authorization claims, it also effectively finds that those claims fail to state a cause of action.[9]

---

[9] Standing pertaining to alleged violations of statutory rights creates an interesting overlap of standing and the merits of a claim. For example, an individual has standing if she alleges that a violation of a procedural right poses an increased risk of real harm. Spokeo, 136 S. Ct. at 1549–50. This necessarily requires a court to determine if the complaint alleges a violation of a procedural right. Here, Jones has failed to allege the violation of a statutory right.

## 1. Willfulness

The Salvation Army asserts that Jones's pre-adverse action claim should be dismissed for failing to allege a willful violation. Under the FCRA, an entity that "willfully fails to comply with any requirement [of the FCRA] with respect to any consumer is liable to that consumer" for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000," punitive damages, and reasonable attorneys' fees and costs. § 1681n(a). Whether a violation is "willful" is important because a negligent violation only allows for the recovery of actual damages and reasonable attorneys' fees and costs. § 1681o(a). And in scenarios like Jones's, quantifying actual damages caused by the violation can be difficult.

To allege that The Salvation Army willfully failed to comply with § 1681b(b)(3)(A), Jones must allege that The Salvation Army either knowingly or recklessly violated that section. See Pedro v. Equifax, Inc., 868 F.3d 1275, 1280 (11th Cir. 2017). A company acts in reckless disregard of the FCRA if its "action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69 (2007). Although willfulness is commonly a question for the jury, "[d]istrict courts may, and often do, determine on the pleadings that a plaintiff failed to plead willfulness when the interpretation of

the relevant statute by the consumer reporting agency was not objectively unreasonable." <u>Pedro</u>, 868 F.3d at 1282.

Jones alleges that The Salvation Army's "foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Pre-Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A)." (Doc. 9 ¶ 75). Jones further avers that The Salvation Army knew or should have known about its legal obligations, the statute is clear, and it had legal counsel and written materials available to it. (<u>Id.</u> ¶¶ 76–77).

> Section 1681b(b)(3)(A) states:
>
> Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> (i) a copy of the report; and
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

This mandate is clear: before taking adverse action, an employer must provide a copy of the report and a statement of rights to the applicant. The Salvation Army does not offer an alternative reading of the statute. Instead, it argues that Sterling was responsible for providing the pre-adverse action notice, and for Jones, Sterling mailed the notice but to the incorrect apartment. (Doc. 10 at 20–

21). However, these facts appear nowhere in the Amended Complaint.[10] Thus, Jones has sufficiently alleged that The Salvation Army willfully violated § 1681b(b)(3)(A).

### 2. Class Claims

The Salvation Army also moves to dismiss the class claims for several reasons. It argues that the pre-adverse action claim for the class contains only conclusory allegations, and that individualized issues would predominate, thus dooming class certification. Jones does not address this argument, but instead states that the class members have already been identified and that class certification is more appropriate at a later stage. (Doc. 37 at 21). "[P]recedent . . . counsels that the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the [Court] will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." Mills v. Foremost Ins. Co., 511 F.3d 1300, 1309 (11th Cir. 2008) (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982)). Thus, the Court will deny The Salvation Army's Motion to Dismiss on this basis without prejudice.

---

[10] The Salvation Army cites paragraphs 23 and 24 in the Amended Complaint for its contention that Sterling provided the pre-adverse action letters. (Doc. 10 at 20). But those paragraphs do not support that Sterling was responsible for mailing pre-adverse action letters on The Salvation Army's behalf or that Sterling mailed a letter to Jones but listed the wrong apartment.

## D. Motion to Strike

The Salvation Army has moved to strike portions of Jones's response in opposition to the motion to dismiss because it includes settlement discussions in violation of Federal Rule of Evidence 408 and the Middle District of Florida's discovery rules. In her response to the motion to dismiss, Jones quoted a significant portion of an email from defense counsel concerning the Joint Motion for Preliminary Approval, and she attached the email to the motion. (Doc. 37 at 2, Ex. A). Jones included the email, which has the subject line "Jones v. TSA: Draft Settlement Documents," to support her argument that "[f]rom a practical standpoint Defendant's Motion to Dismiss (Doc. 10) should be denied because Defendant agreed to settle this case." (Doc. 37 at 2).

The Court need not determine whether the inclusion of the email was proper because it did not consider it in resolving the motion to dismiss. Further, contrary to Jones's assertion, whether The Salvation Army agreed to settle has no bearing on the Court's jurisdiction to approve the settlement. Gaos, 139 S. Ct. at 1046; Gerber Chiropractic, 925 F.3d at 1210. Thus, The Salvation Army's motion is moot.

## E. Motion to Approve the Settlement

"A settlement should not be approved unless it is fair, adequate, and reasonable, and the determination of fairness of the settlement is left to the sound discretion of the district court." In re HealthSouth Corp. Sec. Litig., 572

F.3d 854, 859 (11th Cir. 2009). The parties' Joint Motion for Preliminary Approval of Class Action Settlement, (Doc. 26), contemplates two classes, one with 28,579 members (Disclosure and Authorization Class), and another with 1,537 members (Pre-Adverse Action Class, who are also members of the other class). As part of the proposed settlement, The Salvation Army agreed to set aside $500,000 to be distributed pro rata among the members of both classes. However, given that Jones lacks standing to bring the Disclosure and Authorization Class claims, only the Pre-Adverse Action Class remains.

Because the Court cannot approve a settlement pertaining to the disclosure and authorization claims, Gaos, 139 S. Ct. at 1046 (holding that courts are powerless to approve a class action settlement where the named plaintiff lacks standing), and the parties' settlement is a single, commingled fund that did not contemplate one class representing roughly 5% of the original claims, the Joint Motion for Preliminary Approval of Class Action Settlement, (Doc. 26), must be denied. However, at the parties' request, the Court would be willing to consider a motion for preliminary approval for settlement of the Pre-Adverse Action Class's claim.

Accordingly, it is hereby

**ORDERED:**

1.     The parties' Joint Motion for Preliminary Approval of Class Action Settlement, (Doc. 26), is **DENIED**.

2.     The Salvation Army's Motion to Dismiss, (Doc. 10), is **GRANTED in part and DENIED in part**. The motion is granted in that Plaintiff Lashannda Jones lacks Article III standing for her Second and Third Class Claims for Relief. The motion is otherwise denied.

3.     The Salvation Army's Motion to Strike, (Doc. 38), is **DENIED as moot.**

4.     Not later than **December 20, 2019**, the parties shall file a joint notice recommending how the case should proceed.

**DONE AND ORDERED** in Jacksonville, Florida this 15th day of November, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

jb
Copies to:

Counsel of record